UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:17-CV-00138-RJC

| | | |
|---|---|---|
| JAMES S. WILHELM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 10); Plaintiff's Memorandum in Support, (Doc. No. 11); Defendant's Motion for Summary Judgment, (Doc. No. 12); and Defendant's Memorandum in Support, (Doc. No. 13). The motions are ripe for adjudication.

**I. BACKGROUND**

A. Procedural Background

James S. Wilhelm ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of his social security claim. Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act ("SSA") on October 4, 2013, alleging an onset date of May 7, 2013. (Doc. Nos. 9 to 9-1: Administrative Record ("Tr.") at 167). His applications were denied first on

1

January 13, 2014, and again on March 20, 2014 upon reconsideration. (Tr. 99, 110). Plaintiff filed a timely request for a hearing on April 14, 2014, (Tr. 115), and an administrative hearing was held by an administrative law judge ("ALJ") for the Social Security Administration on February 18, 2016. (Tr. 38).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 20–34). Plaintiff requested a review of the ALJ's decision, but on June 7, 2017, the Appeals Council denied Plaintiff's request for a review. (Tr. 4). Plaintiff exhausted his administrative remedies, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), and Plaintiff's Memorandum in Support, (Doc. No. 11), were filed on December 11, 2017. Defendant's Motion for Summary Judgment, (Doc. No. 12) and Memorandum in Support, (Doc. No. 13), were filed on February 8, 2018.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under section 1614(a)(3)(A) of the SSA. (Tr. 23). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n5 (1987). Plaintiff alleges that his disability began on

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

May 7, 2013 due to lower back pain; pain in both legs; and neck pain (Tr. 195).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 34). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 33–34).

In reaching his decision, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity from October 3, 2013, the application date. (Tr. 25). At the second step, the ALJ found that the Plaintiff had the following severe impairments: "lumbar and cervical degenerative disc disease, gastroesophageal reflux disease (GERD), syncope, and depression (20 CFR 416.920(c))." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 146.926)." (Tr. 26–27).

Subsequently, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform "light work" as defined by 20 C.F.R. 416.967(b) except that "he requires a sit/stand option, changing positions twice per hour." (Tr. 27–28). The RFC also stated that Plaintiff "is capable of occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. . . . [Plaintiff] needs a cane to ambulate, but not in performance of job duties. . . . [Plaintiff] can perform simple, routine, repetitive tasks." (Tr. 28). When making this finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." (Tr. 28). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 28). At the fourth step, the ALJ found that Plaintiff has never engaged in substantial gainful activity. (Tr. 32). At the final step, however, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 33–34).

## II.  STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty

in his determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence….").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner,

5

assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

On appeal before this Court, Plaintiff argues that the ALJ first erred by failing to give a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments. (Doc. No. 11 at 5–11). Plaintiff also argues that the ALJ erred by failing to identify apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Id. at 11–16). The Court disagrees with both of Plaintiff's arguments, for the reasons set forth below.

#### A. The ALJ adequately determined Plaintiff's RFC.

Plaintiff argues that the ALJ erred in determining his mental RFC when, in the face of Plaintiff's moderate limitation in concentration, persistence or pace ("CPP"), the ALJ did not discuss Plaintiff's ability to stay on task. (Doc. No. 11 at 5–11). The Court disagrees.

"[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As a result, Mascio stands for the rule that an ALJ must either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is

6

unnecessary, even in the face of the claimant's CPP limitations. Grant v. Colvin, No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016). Mascio does not stand for the proposition, however, that remand is automatically warranted when an ALJ finds a moderate limitation in concentration, persistence or pace but fails to provide a detailed analysis of a plaintiff's ability to stay on task. Holbrook v. Berryhill, 2018 WL 325244 at *4, No. 3:16-cv-00713-RJC (W.D.N.C. Jan. 8, 2018). So long as an ALJ's RFC assessment is supported by substantial evidence in the record, and other inadequacies in the ALJ's decision do not frustrate meaningful review, an ALJ has met his Mascio duty. Mascio, 780 F.3d at 636 ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). Remand for lack of discussion is appropriate only if the ALJ's opinion is "'sorely lacking' in a manner that 'frustrates meaningful review.'" Hubbard v. Berryhill, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (quoting Ponder v. Berryhill, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017)).

Here, the ALJ assigned Plaintiff a moderate limitation in CPP but limits Plaintiff to simple, routine tasks in the RFC. (Tr. 27). On its face, the RFC fails to address Plaintiff's ability to stay on task. Therefore, the Court must look to the ALJ's decision to determine if he adequately explained why Plaintiff does not require a limitation addressing the ability to stay on task and to examine whether substantial evidence supports his RFC determination.

In his opinion, the ALJ found that Plaintiff's moderate difficulties in CPP were "due to depression in combination with chronic pain." (Tr. 27). Notably, the ALJ reported that "there are no specific abnormal objective findings in this regard." (Tr. 27). Indeed, this conclusion comports with the findings of the State agency psychological consultants' assessment, although the ALJ ultimately ascribed "less weight" to these opinions. (Tr. 32, 76–85, 87–97). One of these opinions found that Plaintiff only had "mild" difficulties in maintaining CPP. (Tr. 80). The second assessment reported that Plaintiff stated that he had never been seen by a mental health doctor, alleged that "his physical problems" are what keep him from working, and claimed that "without the physical problems, he would be normal." (Tr. 91). Nevertheless, the ALJ found that "it is *likely* that the claimant may have some difficulty focusing." (Tr. 27) (emphasis added). To support this conclusion, the ALJ noted that "[a]t the hearing, [Plaintiff] tended to speak fast and rambled somewhat when answering questions." "Also, [Plaintiff] had to be reminded several times to respond to the specific questions asked, rather than continuing on with whatever he wanted to say." (Tr. 27).

Upon viewing the record in its entirety, this latter finding, made by the ALJ, seems to be the principal finding regarding any limitation Plaintiff has in CPP. But as the ALJ noted, this finding was not supported by objective medical evidence. Indeed, the only objective medical evidence regarding Plaintiff's mental limitations found Plaintiff's mental limitations to be even less severe than the ALJ's assessment. Upon examining Plaintiff, the State agency psychological consultant concluded that

8

Plaintiff has only a "mild limitation" in CPP. (Tr. 80). Moreover, the ALJ determined that Plaintiff's limitations in CPP were due to the combination of depression and chronic pain. Although the ALJ found "that the evidence as a whole supports a finding that [Plaintiff's] depression meets the criteria to be 'severe,'" he still determined that Plaintiff "retains the ability to do simple, routine, repetitive tasks." (Tr. 32). The ALJ accounted for Plaintiff's chronic pain in his RFC by requiring that Plaintiff have a sit/stand option in work and the ability to change position twice per hour. (Tr. 28). In his RFC determination, the ALJ discussed Plaintiff's depression as well and did not find that it would seriously impede Plaintiff's ability to work:

> [T]he record shows that the claimant has been on antidepressant medications off and on since December 2012 . . . . The claimant reported in January 2014 that his symptoms were "OK" on citalopram . . . . At some point the claimant stopped citalopram, as a May 2015 noted that he restarted it for depression . . . . An emergency department record from two weeks later indicates that this mental status was normal . . . . He was given trazodone in August 2015 . . . . His affect was normal in November 2015 . . . . The undersigned is persuaded that the claimant can perform simple, routine, repetitive tasks despite depression and chronic pain.

(Tr. 31–32). Therefore, the ALJ also adequately considered Plaintiff's depression—the other factor the ALJ perceived to contribute to Plaintiff's moderate limitation in CPP—in his RFC analysis. Due to the paucity of objective medical findings regarding Plaintiff's moderate limitation in CPP, this Court finds that a more thorough function-by-function analysis of the Plaintiff's mental limitations in CPP was unnecessary. Furthermore, this Court finds that the ALJ's decision demonstrates why a full function-by-function analysis of Plaintiff's limitations in CPP was unnecessary.

9

The ALJ concluded in his RFC determination that "[b]ased on the evidence as a whole . . . the [Plaintiff] is able to perform work as described in the residual functional capacity on a sustained basis despite his impairments, both severe and nonsevere." This Court agrees that substantial evidence in the record supports the ALJ's RFC determination. Therefore, the Court finds that the ALJ's discussion of Plaintiff's RFC, and specifically Plaintiff's mental limitations in this regard, was sufficient.

B. <u>The ALJ Properly Relied on the Vocational Expert's Testimony.</u>

Plaintiff argues that the ALJ also erred by failing to identify an apparent conflict between Plaintiff's RFC and his recommended jobs' reasoning levels. Plaintiff grounds his assertion in the Fourth Circuit case of <u>Pearson v. Colvin</u>, 810 F.3d 204 (4th Cir. 2015). In <u>Pearson</u>, the Fourth Circuit held that the ALJ has not fully developed the record if any unresolved conflicts exist between the VE's testimony and the DOT. <u>Pearson</u>, 810 F.3d at 209. Thus, under <u>Pearson</u>, ALJs have a duty to identify any apparent conflicts between the VE's testimony and the DOT and to elicit an explanation regarding an apparent conflict. <u>Id.</u> Plaintiff is correct in recognizing that <u>Pearson</u> elevated the ALJ's responsibility in addressing apparent conflicts; however, Plaintiff is incorrect in finding that an apparent conflict exists in the case at hand.

Specifically, Plaintiff alleges that the ALJ failed to identify an apparent conflict between the VE's testimony claiming that Plaintiff could perform the jobs toll collector (Reasoning Level 3) and ticket taker and marker (both Reasoning

Level 2) and limiting Plaintiff to only simple, routine, repetitive tasks. Plaintiff points out that jobs with a Reasoning Level of 2 "require the ability to follow oral or written *detailed* instructions" and that Reasoning Level 3 jobs require the ability for even "more complex instructions than Reasoning Level 2." (Doc. No. 11 at 13). Plaintiff alleges that the VE's proposed jobs are more demanding than performing simple, routine, repetitive tasks.

This Court has repeatedly addressed and refuted Plaintiff's argument. "There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work is consistent with a DOT reasoning level of either 2 or 3." Thomas v. Berryhill, No. 3:16-CV-00836-MOC, 2017 WL 3595494, at *5 (W.D.N.C. Aug. 21, 2017), appeal docketed, No. 17-2215 (4th Cir. Oct. 18, 2017) (quoting Carringer v. Colvin, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014)); see also Corvin v. Berryhill, No. 5:17-CV-92-RJC-DSC, 2018 WL 3738226, at *4 (W.D.N.C. Aug. 7, 2018) ("Reasoning level 2 jobs 'do not imply an apparent conflict with a work limitation to simple, routine, repetitive work.'" (quoting Bethea v. Berryhill, 5:17-CV-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018)). Other courts have found that "even level 3 reasoning is not inconsistent with the ability to do only 'simple' work." Id. (citing Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) and Clontz v. Astrue, No. 2:12-cv-12-FDW, 2013 WL 3899507, at *5 n.6 (W.D.N.C. Jul. 29, 2013)). Therefore, no apparent

conflict exists between jobs having a Reasoning Level of 2 or 3 and a limitation to only performing simple, routine, repetitive tasks.

## IV. CONCLUSION

Because this Court finds that the ALJ properly accounted for Plaintiff's nonexertional mental functions in his RFC determination and that no apparent conflict exists between the VE's testimony and the DOT, the Court affirms the decision of the ALJ. Substantial evidence supports the ALJ's determination, and remand would be improper because the ALJ's decision is not sorely lacking as to frustrate meaningful review.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 12), is **GRANTED**.

3. The Commissioner's determination is **AFFIRMED**;

4. The Clerk of Court is directed to close this case.

Signed: September 29, 2018

Robert J. Conrad, Jr.
United States District Judge